# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) 2:12-cr-240 |
| v. | ) |
| | ) |
| JESSE NATHANIEL PENN, JR., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court are numerous pretrial motions filed by Defendant ("Penn"): MOTION IN LIMINE TO COMPEL THE GOVERNMENT TO PROVIDE DEFENDANT WITH A STATEMENT OF UNCHARGED MISCONDUCT EVIDENCE (ECF No. 27); MOTION TO DISMISS THE INDICTMENT ON JURISDICTIONAL GROUNDS (ECF No. 28); MOTION FOR DISCOVERY (ECF No. 29); and MOTION TO SUPPRESS EVIDENCE (ECF No. 30). The government filed an omnibus response to the motions. On July 11, 2013 the Court conducted an evidentiary hearing on the Motion to Suppress Evidence and heard argument on the other motions. At the request of defense counsel, the Court permitted post-hearing briefing and both Penn and the government submitted additional memoranda of law regarding the Motion to Suppress Evidence. The motions are now ripe for disposition.

Factual and Procedural Background

On September 18, 2012 a grand jury issued a one-count indictment which charged Penn with the crime of possession of two firearms and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). The firearms and ammunition were seized on June 16, 2011 from a storage room in the basement of a home rented by Penn's estranged wife, Ginera Penn.

Briefly summarized, the evidence reflected that Penn came to the attention of police officers on June 7, 2011 as a suspect in a shooting incident. Penn was apprehended on June 13, 2011 and charged

with aggravated assault, but was released on bond. On June 14, 2011 a passerby found a firearm near the scene of the shooting, which police linked to the shooting. Police officers also learned that two bench warrants had been issued for Penn's arrest for probation/parole violations. Detective Hitchings testified that he then contacted members of a fugitive task force to attempt to locate and arrest Penn. Through the investigation, Hitchings learned of three possible residences for Penn: (1) 523 Franklin Street in East Pittsburgh; (2) the home of his girlfriend on the North Side of Pittsburgh; and (3) the home of Ginera Penn on Harrison Street in Swissvale, Pennsylvania.

On the morning of June 16, officers went first to the girlfriend's home. Penn was not there. During the conversation, the girlfriend asked whether the officers had checked the wife's house. Officers next determined that nobody answered at the Franklin Street address. They then proceeded to the Swissvale address of Penn's estranged wife.

While en route to Swissvale, at approximately 10:30-11:00 a.m., the officers contacted Ginera Penn by phone through her employment. Ginera Penn informed the officers that she and Jesse Penn were going through a divorce and that two days earlier, Penn had come back and requested to stay at her home and to store some items there. She indicated that she had given Penn a key to the home; that he was staying there, although she did not know whether he was in the home at the time of the phone call; and that his belongings were in a storage room in the basement. Ginera Penn also stated that the last time she thought Penn had been at the home was at least two days ago.

Detective Hitchings testified that during this phone call, Ginera Penn gave officers permission to enter and search the home for Jesse Penn. Transcript at 17, 30. Officer Hitchings testified that this consent was obtained from Ginera Penn prior to the officers' entry into the home. The Court finds that this testimony was credible and was uncontroverted.

After the phone call, the team of officers assembled at the front and rear of the home. Detective Foley briefly observed a black male looking out of a second-floor window. The officers could not positively identify the person as Jesse Penn. After there was no response to their "knock and announce"

2

for several minutes, officers broke through the back door and dispersed throughout the home. Detective Foley testified that he went down the basement stairs with his gun drawn to search for Penn and to perform a protective sweep to look for other persons/threats. In the basement, Foley observed a partially-open door to a walk-in storage area. When he looked into the storage room to check for persons/threats, Foley saw a bag which he recognized as a carry bag for a bulletproof vest. At that time, Foley did not investigate the vest further. After he completed his protective sweep, Foley returned from the basement and learned that Penn had been found upstairs and taken into custody. At that point, Foley notified Hitchings of what he had seen. The officers secured the home, and sat on the front porch for approximately two hours while a search warrant was obtained. After the search warrant was issued, the officers returned to the basement and found and seized various items, including the ballistic vest, two firearms, ammunition, and a shoebox with various bills. The Court finds that Detective Foley's testimony is credible and uncontroverted.

After Penn was apprehended, he was taken to the homicide office. Detective Hitchings testified that Penn was not given a Miranda warning because Penn had invoked his rights just three days earlier and the officers had no intention of attempting to interrogate him. At approximately 4:00 p.m. on June 16, after the paperwork was completed, Penn was transported to the Allegheny County Jail by Hitchings and Detective Langan. As they approached the jail, Penn asked the officers what was found in the house. Hitchings told Penn about the vest and firearms. Hitchings testified that Penn responded by asking if there was anything he could do to make the firearms go away. Transcript at 25.

Motion to Suppress Evidence

Defendant seeks to suppress the items seized from the basement by challenging the initial entry into the Swissvale home, and also seeks to suppress Penn's statements in the police car. Defendant contends that officers did not have probable cause or a reasonable basis to believe that Penn was in the Swissvale home, and therefore, their entry violated the standards set forth in *Payton v. New York*, 445

3

U.S. 573 (1980). The government, in response, contends that Penn's argument is moot, because Ginera Penn consented to their entry and search of the home.[1]

Penn did not dispute or counter the government's "consent" rationale, either factually or legally. It is well-established that officers may enter a home to make an arrest if voluntary consent is obtained from an individual with authority to give such consent. *Steagald v. United States,* 451 U.S. 204, 214 n. 7, (1981) ("[A]bsent exigent circumstances **or consent**, an entry into a private dwelling to conduct a search or effectuate an arrest is unreasonable without a warrant.") (Emphasis added). The record in this case is undisputed that Ginera Penn gave such consent. Thus, the initial entry into the home was reasonable. The Court further concludes that a protective sweep of the entire home was reasonable, given that: Penn was a suspect in a shooting incident; at least one male person was known to be in the home; it was unknown whether other persons were in the home; and several minutes had elapsed since the "knock and announce" without acknowledgement. Thus, Detective Foley was justifiably in the basement when he observed the bulletproof vest in plain sight. *See Maryland v. Buie*, 494 U.S. 325, 332-36 (1990) (denying motion to suppress running suit seen in plain view during protective sweep of basement). Penn does not challenge the eventual seizure of the items pursuant to a search warrant based on an affidavit with the plain view averments. In sum, the items seized from the Swissvale home will not be suppressed.

Nor will the statements made by Penn while en route to the jail in the vehicle be suppressed. The evidentiary record is undisputed that Penn himself initiated the conversation with the officers. *See Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). Indeed, the post-hearing brief of defense counsel concedes that no argument is made on this point.

In accordance with the foregoing, the MOTION TO SUPPRESS EVIDENCE (ECF No. 30) will be **DENIED**.

---

[1]The government also argues that officers did possess a reasonable belief that Penn was in the residence. The Court does not reach this argument.

Motion re Uncharged Misconduct Evidence

Penn seeks disclosure of all prior misconduct evidence which the government intends to offer at trial pursuant to Fed. R. Evid. 404(b) and 609. The government, in response, represents that: it has provided counsel with a copy of Penn's criminal record; it has not yet determined what evidence it may seek to introduce; it is aware of its obligations under those Rules; and it will provide such notice "at least two weeks prior to trial." Such disclosure is reasonable.

In accordance with the foregoing, the MOTION IN LIMINE TO COMPEL THE GOVERNMENT TO PROVIDE DEFENDANT WITH A STATEMENT OF UNCHARGED MISCONDUCT EVIDENCE (ECF No. 27) will be **DENIED WITHOUT PREJUDICE**.

Motion to Dismiss Indictment

Defendant challenges the "interstate commerce" element of the offense and contends that this Court lacks subject-matter jurisdiction because 18 U.S.C. § 922(g) is unconstitutional. Defense counsel recognizes that his argument is foreclosed by binding precedent from the United States Supreme Court. Defense counsel further explains that he merely intends to preserve this issue in anticipation of the overruling of that precedent. The government contends that § 922(g) is constitutional, and is likely to remain so. The Court need not reach the merits of the parties' competing commerce clause theories, as it is undisputed that this Court is bound by existing authority.

Accordingly, the MOTION TO DISMISS THE INDICTMENT ON JURISDICTIONAL GROUNDS (ECF No. 28) will be **DENIED**.

Motion for Discovery

Defendant asks the Court to order the government to provide the discovery materials to which he is entitled pursuant to Fed. R. Crim. P. 16, *Giglio*, *Brady*, *Napue*, *Perdomo,* and progeny. Specifically, Penn seeks disclosure of, inter alia: (1) which statements made during recorded calls of Penn while

incarcerated will be placed in evidence; (2) conduct, character and credibility evidence of witnesses, including officers; (3) any exculpatory or impeachment evidence; (4) any evidence which would show bias or prejudice by witnesses against Penn; (5) agreements with cooperating witnesses; (6) rough notes; (7) a list of other cases/investigations involving the cooperating witnesses; and (8) impeachment materials and criminal records of prosecution witnesses. At the hearing on July 11, Defendant requested the disclosure of impeachment materials at least two weeks prior to trial; and explained that the recorded telephone calls are voluminous. Finally, Defendant requested information as to whose DNA was on the firearm.

In response, the government represents that substantial discovery has already been provided, and contends that the time for disclosing additional evidence has not yet come or is not required. The government states that it has already fully complied with its Rule 16 obligations; that it is unaware of any *Brady* materials; that *Giglio* evidence will be disclosed within five days prior to trial; and that Jencks Act materials will be disclosed within three days prior to trial. The government further states that it has not yet decided which recorded telephone call statements of Penn it will seek to introduce at trial. At the July 11 hearing, the government agreed to provide notice to Defendant of which statements it would use at least one week prior to trial. Both parties expected to resolve the request for DNA information amicably.

Discovery in a criminal case is far different from that in a civil case. The government's obligation to make available pretrial discovery materials is governed primarily by Rule 16 of the Federal Rules of Criminal Procedure. Outside of Rule 16, the Jencks Act, and Brady and its progeny, however, a defendant has no general constitutional right to pretrial discovery. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Those rights conferred by rule, statute, and case law cannot be used to compel the United States to disclose the minutia of its evidence, trial strategy, or investigation. *United States v. Fiorvanti*, 412 F.2d 407, 411 (3d Cir.), cert. denied, 396 U.S. 837 (1969). The Court of Appeals for the Third Circuit has recognized that discovery in criminal cases is limited to those areas listed in Federal Rule of Criminal Procedure 16(a)(1), "with some additional material being discoverable in accordance with

statutory pronouncements and the due process clause of the Constitution." *United States v. Ramos*, 27 F.3d 65, 68 (3d Cir. 1994). The Court appreciates, and in some circumstances shares, Defendants' frustration with these discovery limitations. Moreover, the Court is confident that the government is well aware of its continuing duty to provide material to Defendants, and that it will faithfully discharge its duty without "tacking too close to the wind." *Kyles v. Whitley*, 514 U.S. 419, 439 (1995).

The Court recognizes that it cannot compel the government to make early disclosures of its discovery materials to Defendant. On the other hand, as the government acknowledges, strict compliance with the applicable time limits will likely cause delays at trial, depending upon the scope of the government's disclosures. The Court will hold the government to its various representations that Jencks materials will be disclosed at least three (3) days prior to trial, and other materials will be disclosed further in advance - but it regards those positions to strain the limits of reasonableness. The Court encourages the government to voluntarily accommodate defense counsel's reasonable request that all such materials be produced at least ten (10) to fourteen (14) days prior to trial.

In accordance with the foregoing, the MOTION FOR DISCOVERY (ECF No. 29) is **DENIED WITHOUT PREJUDICE**.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | )  2:12-cr-240 |
| v. | ) |
| | ) |
| JESSE NATHANIEL PENN, JR., | ) |
| Defendant. | ) |

## ORDER OF COURT

AND NOW, this 17th day of September, 2013, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that the MOTION IN LIMINE TO COMPEL THE GOVERNMENT TO PROVIDE DEFENDANT WITH A STATEMENT OF UNCHARGED MISCONDUCT EVIDENCE (ECF No. 27) is **DENIED WITHOUT PREJUDICE**; the MOTION TO DISMISS THE INDICTMENT ON JURISDICTIONAL GROUNDS (ECF No. 28) is **DENIED**; the MOTION FOR DISCOVERY (ECF No. 29) is **DENIED WITHOUT PREJUDICE**; and the MOTION TO SUPPRESS EVIDENCE (ECF No. 30) is **DENIED.**

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: W. Penn Hackney, FPD
     Paul D. Kovac, AUSA